# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CORNELIUS TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:18CV897 |
| | ) |
| CPL. KIVETT, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendants Cpl. Kivett, Sgt. Engle,[1] Major Slater, Captain Settle, and Corporal Money's ("FCDC Officers") motion for summary judgment (Docket Entry 62), Defendant Amy Leeper's motion for summary judgment (Docket Entry 69), and Defendants Dr. Cunningham and Nurse McKoy's motion for summary judgment (Docket Entry 72). *Pro se* Plaintiff Cornelius Tucker has filed a response solely to the FCDC Officers' motion for summary judgment. (*See* Docket Entry 67.) Also before the Court is Plaintiff's motion for appointment of counsel. (Docket Entry 88.) All matters are ripe for disposition. For the following reasons, the Court will deny Plaintiff's motion for appointment of counsel, and recommend that Defendants' motions for summary judgment be granted.

---

[1] Plaintiff's Complaint incorrectly identifies Defendant Engle as "Ingle."

**I. BACKGROUND**

Plaintiff filed this action alleging that his constitutional rights were violated as a pretrial detainee at the Forsyth County Detention Center ("FCDC"). (*See generally* Compl., Docket Entry 2; *see also* Docket Entries 3, 5-12.) Although the majority of Plaintiff's pleadings are virtually unintelligible and difficult to discern, it appears that the substance of his claims is grounded in allegations of inadequate healthcare, particularly related to Plaintiff's alleged glioblastoma brain tumor and other medical ailments. (Docket Entries 2-3, 5-12.) Additionally, Plaintiff asserts that he was deprived of hygiene supplies and utensils. (Docket Entry 2.)

In support of their motions for summary judgment, Defendants have submitted several affidavits. As to the FCDC Officers' motion, they have submitted the affidavit of Defendant Slater who holds the rank of Major with the FCDC. (Slater Aff. ¶ 2, Docket Entry 63-1.) Defendant Slater states that based upon Plaintiff's record, the nature of his pending charges, his criminal history, and officer/inmate safety concerns, he is classified as a high security risk and as such is housed in administrative segregation rather than in general population within the FCDC. (*Id.* ¶ 7.) FCDC officials entered Special Administrative Orders regarding Plaintiff such that he was not provided physical objects he could potentially harm himself with as he had previously done at the FCDC. (*Id.*) The conditions of Plaintiff's confinement are reviewed weekly by supervising jail staff and are modified as needed. (*Id.* ¶ 8.)

Additionally, Defendant Slater states that Plaintiff is seen on a daily basis by the inmate healthcare provider at the facility. (*Id.* ¶ 10.) The healthcare services are contracted out to

Wellspath, LLC, formerly known as Correct Care Solutions. (*Id.* ¶ 9.) Due to such contract, the Forsyth County Sheriff's Office does not provide healthcare to inmates at the FCDC, nor does its staff interfere with an inmate's access to care as determined by Wellpath's medical staff. (*Id.* ¶ 11.) Lastly, Defendant Slater states that he nor any of the other named FCDC Officers have been delegated policy-making authority in this action. (*Id.* ¶ 12.) Nor has Plaintiff availed himself to FCDC's grievance procedures in this action, which he is well aware of. (*Id.* ¶¶ 13-15.)

Defendant Leeper has also filed an affidavit in support of her motion for summary judgment. (Amy Leeper Aff., Docket Entry 70-1.) Defendant Leeper states that she is a psychologist employed by Central Regional Hospital, a state-operated healthcare facility. (*Id.* ¶¶ 2-3.) On two occasions, she conducted court-ordered evaluations of Plaintiff to determine his capacity to stand trial. (*Id.* ¶¶ 4, 6.) During those two interactions with Plaintiff, Defendant Leeper always followed established policies and procedures. (*Id.* ¶ 5.)

Defendants Dr. Cunningham and Nurse McKoy have also filed affidavits (and exhibits thereto) in support of their motion. (Cunningham Aff., Docket Entry 73-5; McKoy Aff., Docket Entry 73-6.) According to said Defendants, on November 28, 2017, Central Regional Hospital faxed Plaintiff's discharge summary to the medical providers at the FCDC. (Central Regional Hospital Discharge Summary, Ex. 1, Docket Entry 73-1.) The summary encompasses Plaintiff's stay at Central Regional Hospital from July 6, 2017 to November 22, 2017 for an "incapacity to proceed" determination. (*Id.* at 1.) The record reflects that Plaintiff's principal discharge diagnosis was "schizoaffective disorder, bipolar type" along with

3

other behavioral health and medical diagnoses. (*Id.* at 15.) The discharge summary notes that Plaintiff underwent an MRI of the brain on July 23, 2017 that showed "parenchymal volume loss and scattered T2/FLAIR hyperintense white matter foci that are likely the Sella chronic small-vessel ischemic changes. No acute intracranial abnormality." (*Id.* at 13.)

Plaintiff was discharged from Central Regional Hospital back to the FCDC with the following discharge plan:

> [Plaintiff] will be discharged back to [the FCDC]. He will need to continue *medications as prescribed and receive mental health follow up in jail.* Trazodone can be further titrated (has previously been on and tolerated doses up to 150mg qHS) for insomnia with close attention to [blood pressure] as [patient] with [history of] hypotension related to medications. [Patient] with [history of] hepatitis C, currently normal liver function. He will need hepatitis A (#2) and B (#3) vaccinations in January 2018, avoid hepatotoxic medications as able (e.g. acetaminophen).

(*Id.* at 15) (emphasis added). The medications listed on admission and on discharge included: olanzapine for psychosis; mirtazapine for depression, anxiety and sleep; Depakote for mood stabilization; benztropine to alleviate side effects associated with antipsychotic medications; aspirin to protect against cardiovascular disease; vitamin D3 for a vitamin D deficiency; hydroxyzine for insomnia and anxiety; perphenazine for psychosis; and trazadone for insomnia. (*Id.* at 8, 14.)

Between April 10, 2015 and November 14, 2018, medical officials at the FCDC saw Plaintiff on 35 to 40 occasions for evaluation, examination or counseling. (Medical Records, Ex. 4, Docket Entry 73-4.) Dr. Cunningham first provided psychiatric care to Plaintiff on June 21, 2016. (Cunningham Aff. ¶ 38; *see also* Medical Records at 53-56.) Dr. Cunningham

saw Plaintiff three more times between June 21, 2016 and November 14, 2018. (Cunningham Aff. ¶¶ 39-40, 42; *see also* Medical Records at 58-60, 61-63, 64-66.) At each visit, Dr. Cunningham evaluated Plaintiff for schizoaffective disorder and reasonably concluded that Plaintiff's symptoms were related to his diagnosis of schizoaffective disorder. (Cunningham Aff. ¶¶ 38-40, 42.) At no time in his case did Dr. Cunningham have reason to believe that Plaintiff suffered from a brain tumor or brain leisure that required testing or treatment. (*Id.* ¶ 55.) Dr. Cunningham stated that he reasonably treated Plaintiff for schizoaffective disorder consistent with his training and experience as a psychiatrist. (*Id.* ¶ 56.)

As to Nurse McKoy, he was not aware of any diagnosis of a brain tumor or other serious medical need that required treatment. (McKoy Aff. ¶ 16.) Nurse McKoy was aware of Plaintiff's mental health disorder diagnosis and when Plaintiff reported hearing voices and claimed to have been suffering from a glioblastoma tumor, Nurse McKoy reasonably referred Plaintiff to a mental health professional. (*Id.* ¶¶ 12-13, 17.) Nurse McKoy states that at no time were mental health staff deliberately indifferent to a serious medical condition. (*Id.* ¶ 17.)

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its

5

burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson,* 477 U.S. at 248-49. Here, Plaintiff is a *pro se* litigant; thus, his pleadings are to be liberally construed. *Graham v. Geneva Enters., Inc.*, 55 F. App'x 135, 136 (4th Cir. 2003).

### A. The FCDC Officers

The FCDC Officers move for summary judgment on grounds that Plaintiff has failed to bring forth any evidence of constitutional violations in their official or individual capacities. The undersigned agrees. To the extent Plaintiff's Complaint attempts to allege claims against the FCDC Officers in their official capacity, such claims would be against the Forsyth County

Sheriff's Office. However, the Forsyth County Sheriff's Office may not be held liable under section 1983 "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." *Collins v. City of Harker Heights,* 503 U.S. 115, 120-21 (1992) (internal citation and quotations omitted). Stated differently, the doctrine of *respondeat superior* may not serve as the basis for imposing section 1983 liability on a governmental entity. *Collins,* 503 U.S. at 121. Rather, "[o]fficial liability will attach under § 1983 only if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Gantt v. Whitaker*, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (internal citation and quotations omitted), *aff'd,* 57 F. App'x 141 (4th Cir. 2003). In the instant matter, Plaintiff does not argue that an official policy or custom caused his injury, nor does Plaintiff provide evidence to support a claim that his rights were impaired by the act(s) of any of the FCDC Officers and that any of them had final policy making authority. Thus, summary judgment should be granted in favor of the FCDC Officers as to any claims in their official capacity.

Similarly, the FCDC Officers' individual capacity claims fail as these Defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from

personal-capacity liability for civil damages under § 1983[.]'"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[2] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Again, Plaintiff's factual allegations, which are mostly indecipherable, fail to identify what each of the FCDC Officers did personally to violate his civil rights. Instead, the evidence by the FCDC Officers demonstrates that Plaintiff was reasonably placed in administrative segregation and during such time, Plaintiff was subject to additional restrictions (including not possessing potentially harmful physical objects) that were reviewed weekly. Plaintiff's opposition brief fails to put forth any evidence to the contrary.[3] Since Plaintiff has failed to identify conduct by the FCDC Officers that is in violation of his constitutional rights, the

---

[2] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001), in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

[3] Plaintiff's response brief does discuss the FCDC Officers' support brief's improper naming of Plaintiff and improper designation of criminal charges. (*See* Docket Entry 67 at 1.) In their reply, the FCDC Officers acknowledge the mistake. (*See* Docket Entry 68.) Plaintiff's opposition brief also request that this case be held in abeyance during his time at the Central Regional Hospital. (*See* Docket Entry 67 at 1.) However, this request is moot as Plaintiff returned to the FCDC on or about July 25, 2019. (*See* Docket Entry 79 at 1.)

FCDC Officers are entitled to qualified immunity and any individual capacity claims against them should be dismissed.

   B. **Defendant Leeper**

Defendant Leeper also moves for summary judgment on grounds that she is entitled to absolute immunity in her official capacity and qualified immunity in her individual capacity. The Eleventh Amendment bars suits against states and any state instrumentality properly characterized as an "arm of the state." *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429-30 (1997). Here, Defendant Leeper is state official who has, arguably, been sued in her official capacity in violation of § 1983. As such, because Defendant Leeper has not waived her immunity and Congress has not abrogated it for § 1983 actions, Plaintiff cannot seek damages against her in her official capacity.[4] *See Kelly v. Maryland,* 267 Fed. App'x, 209, 210 (4th Cir.2008) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) ("It is now well-settled that a state [or state official] cannot be sued under § 1983.")).

---

[4] The Court acknowledges that Eleventh Amendment immunity is not absolute. "[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 437 (2004) (citing *Ex parte Young,* 209 U.S. 123 (1908)). Federal courts thus may order prospective relief but cannot award damages unless the state waives its immunity or Congress abrogates the state's immunity in exercising its powers under the Fourteenth Amendment. *Id.; Coll. Sav. Bank v. Fla Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999). To the extent Plaintiff requests prospective relief—either in the form of a declaratory judgment or an injunction—it fails because he does not allege an "ongoing violation of federal law" permitting the application of the *Ex parte Young* doctrine. *See DeBauche v. Trani,* 191 F.3d 499, 504-05 (4th Cir. 1999) (holding that Eleventh Amendment immunity barred declaratory and injunctive relief when no ongoing violations of federal law were alleged.). As later discussed, Defendant Leeper encountered Plaintiff on two distinct occasions for psychological evaluations. There are no allegations of continuous interactions with Defendant Leeper in violation of federal law.

Defendant Leeper is also entitled to qualified immunity in her individual capacity. Plaintiff is a pretrial detainee, thus "the standard of care is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment." *Hill v. Nicodetnus*, 979 F.2d 987, 990-91 (4th Cir. 1992) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). As such,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cty. Dep't of Soc. Sens.*, 489 U.S. 189, 200 (1989).

"Historically, the United States Court of Appeals for the Fourth Circuit has applied the same analysis to Section 1983 deliberate indifference claims under the Fourteenth Amendment as under the Eighth Amendment." *Durand v. Charles*, No. 1:16CV86, 2018 WL 748723, at *11 (M.D.N.C. Feb. 7, 2018) (citation omitted) (unpublished). "The plaintiff must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[5] A medical need is serious if it "has been diagnosed by a

---

[5] The Supreme Court recently held in *Kingsley v. Hendrickson* that "the appropriate standard for [assessing] a pretrial detainee's excessive force claim is solely an objective one." —— U.S. ——, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015). The Fourth Circuit has not considered whether this

physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotations omitted). "An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Id.* (citation omitted).

"Prisoners' rights to adequate medical care related to prisoners' physical and mental health claims are identical." *DePaola v. Schilling*, No. 7:15CV00403, 2019 WL 3417359, at *7 (W.D. Va. Mar. 18, 2019) (unpublished) (citing *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977)). The Fourth Circuit also recognizes that "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Similarly, "[d]isagreements between an inmate and a physician over the inmates proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). The Court may consider "[m]edical records of sick calls, examinations, diagnoses, and medications [to] rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

As previously stated, Defendant Leeper's interactions with Plaintiff consists of her conducting two court-ordered evaluations of Plaintiff. Defendant Leeper followed established policies and procedures, and her conduct was objectively reasonable in light of constitutional requirements. No reasonable person would believe Defendant Leeper was violating Plaintiff's

---

standard applies in the medical care context. Here, the Court need not resolve this issue as "consideration of the subjective prong does not alter the outcome" in this matter. *Durand*, 2018 WL 748723, at *11.

11

constitutional rights in performance of her job duties. Plaintiff has filed no response to Defendant Leeper's motion and puts forth no evidence to the contrary.

Plaintiff's Complaint alleges that "def. Leeper lied, stated [Plaintiff] never received S.S. […] stated open-alcohol, received 18 months . . . Leepers discrepancies are calculated to produce a proclivity, penchant for wrongful determinations." (Docket Entry 9 at 3.) Plaintiff continues, "I don't expect Leeper to be perfect, however her performance tends to be erroneous in parts of her report. You'll find, obviously, exploitations to degrade and 'opined' the insignificant traits or some subliminal, hidden-campaign." (*Id.*) Plaintiff has produced no evidence supporting these rambling allegations, and in any event they are insufficient to state a claim. Moreover, Plaintiff's rambled thoughts appear to express simple disagreements with Defendant Leeper's reports which is insufficient to withstand summary judgment. As such, Defendant Leeper's motion should be granted. *Mitchell v. Forsyth Cty.*, No. 1:18CV574, 2019 WL 3409983, at *4 (M.D.N.C. July 29, 2019) (unpublished) ("Plaintiff alleges no facts demonstrating that the treatment proscribed by Defendant . . . was not appropriate, much less that any exceptional circumstances exist so that Plaintiff's disagreement with [Defendant's] course of treatment constitutes deliberate indifference.").

### C. Dr. Cunningham and Nurse McKoy

Summary judgment should also be granted in favor of Dr. Cunningham and Nurse McKoy. Despite the allegations in Plaintiff's Complaint alleging mistreatment of a brain tumor, the evidence before the Court is completely devoid of such diagnosis. The discharge summary referenced above from Central Regional Hospital does not include a diagnosis of a

12

glioblastoma, treatment for a glioblastoma or even follow-up testing for a possible glioblastoma. Nor does the discharge summary indicate that treatment or testing is required for any other type of brain tumor. Additionally, there is no evidence in the record that Plaintiff's other alleged medical conditions rise to the level of a serious medical need.

Moreover, the actions of Dr. Cunningham demonstrate that he reasonably concluded that Plaintiff's symptoms stemmed from his schizoaffective disorder and reasonably treated Plaintiff for that disorder. Dr. Cunningham had no reason to believe that Plaintiff suffered from a glioblastoma or brain tumor that required medical treatment. Likewise, Nurse McKoy also did not act with deliberate indifference to a serious medical need. He was not, nor should he have been, aware of any diagnosis of a glioblastoma tumor or other serious medical need that required treatment. Nurse McKoy's minimal interactions with Plaintiff, including making referrals to a mental health professional on behalf of Plaintiff, were reasonable under the circumstances. As with Defendant Leeper, Plaintiff appears to disagree with the form of treatment he received from Nurse McKoy and Dr. Cunningham. As previously explained, however, this is insufficient to make a showing of deliberate indifference to a serious medical need. Therefore, summary judgment should be granted in favor of both Nurse McKoy and Dr. Cunningham.

**D. <u>Remaining Unserved Defendants</u>**

The record demonstrates that Defendants Sheriff Schatzman, Shipman (Medical Technician), and Guard Bogner have not been served in this matter, and the time for service has passed. Rule 4(m) of the Federal Rules of Civil Procedure allows the Court to

13

dismiss without prejudice unserved defendants after 90 days following the filing of the Complaint. Fed. R. Civ. P. 4(m). While the rule requires the Court to extend the time for service if Plaintiff shows good cause for his failure to timely serve, here, Plaintiff has provided no explanation showing good cause for the delay and additional time is thus not warranted. Therefore, the undersigned will recommend that the unserved Defendants be dismissed without prejudice.

   E. **Motion for Appointment of Counsel**

Plaintiff moves for appointment of counsel in this matter. (Docket Entry 88.) In light of the Court's recommendation of dismissal of this action, the undersigned will deny Plaintiff's request. Appointment of counsel is not warranted at this time.

**IV. CONCLUSION**

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Appoint Counsel (Docket Entry 88) is **DENIED**.

**IT IS HEREBY RECOMMENDED** that Defendants Cpl. Kivett, Sgt. Engle, Major Slater, Captain Settle, and Corporal Money's Motion for Summary Judgment (Docket Entry 62) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendant Amy Leeper's Motion for Summary Judgment (Docket Entry 69), and Defendants Dr. Cunningham and Nurse McKoy's Motion for Summary Judgment (Docket Entry 72) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendants Sheriff Schatzman, Shipman (Medical Technician), and Guard Bogner be **DISMISSED WITHOUT**

**PREJUDICE.**

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Joe L. Webster
　　　　　　　　　　　　　　　　United States Magistrate Judge

December 16, 2019
Durham, North Carolina